UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------

DAVID WAYNE MANCHESTER,

                Plaintiff,

   -v-                                                      7:13-CV-00308

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

-----------------------------------

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP<br>Attorneys for Plaintiff<br>300 S. State Street, Suite 420<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ. |
| OFFICE OF REGIONAL GENERAL COUNSEL<br>SOCIAL SECURITY ADMINISTRATION REGION II<br>Attorneys for Defendant<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | TOMASINA DIGRIGOLI, ESQ. |

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## I. **INTRODUCTION**

Plaintiff David Wayne Manchester ("Manchester" or "plaintiff") brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of defendant Commissioner of Social Security's ("Commissioner" or "defendant") final decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties

have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.[1]

## II. BACKGROUND

On January 18, 2011, Manchester filed applications for DIB and SSI claiming a period of disability beginning on November 1, 2010 as a result of his seizure disorder, right eye blindness, and loss of smell. R. at 129-141.[2] These applications were initially denied on April 15, 2011, and plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). Id. 54-61.

On March 6, 2012, ALJ Marie Greener presided over an administrative hearing in Syracuse, New York, and Manchester, represented by an attorney, appeared and testified by video in Watertown, New York. R. at 32-50. Plaintiff's testimony established, in relevant part, that he suffered a serious head injury in 1998 after falling from a roof while working for a construction company. Id. Plaintiff further testified that he is nearly blind in his right eye, and that he now suffers from nocturnal episodes of seizures that cause him to feel exhausted the next day. Id. 45. Plaintiff indicated that although he takes medication for these seizures, they still occur approximately two to three times per month. Id. Plaintiff also testified that, approximately once a week, he suffers from a headache that may cause him to feel dizzy and force him to lie down. Id. 46.

On March 26, 2012, ALJ Greener rendered a written decision concluding that Manchester was not disabled within the meaning of the Social Security Act from November 1,

---

[1] Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

[2] Citations to "R." refer to the Administrative Record. ECF No. 10.

2010, through the date of her decision. R. at 18-27. Plaintiff timely appealed this unfavorable disability determination to the Appeals Council. Id. 13. On February 25, 2013, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. Id. 1-3. On March 18, 2013, Manchester filed this action seeking judicial review of the Commissioner's denial of benefits. Because the parties are familiar with the underlying facts, they are discussed only to the extent necessary to address plaintiff's appeal.

## III. LEGAL STANDARD

### A. Scope of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. See id. Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent

review of the evidence may differ from the Commissioner's. Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

## B. Disability Determination—The Five-Step Evaluation Process

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. Perez, 77 F.3d at 46. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy,

heavy, medium, light, and sedentary. Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

## IV. DISCUSSION

### A. ALJ's Decision

ALJ Greener determined that Manchester had not engaged in substantial gainful activity since November 1, 2010, the alleged onset date. R. at 20. The ALJ next found that plaintiff's seizure disorder, right eye blindness, and headaches were severe impairments, but that this combination of severe impairments did not meet or equal any of the Listings. Id. 20-21. The ALJ then determined that plaintiff retained the RFC to:

> lift and/or carry 20 pounds on an occasional basis; lift and/or carry 10 pounds on a frequent basis; stand and/or walk for about six hours; and sit for about six hours . . . . the claimant should not have any exposure to unusual workplace hazards such as working at unprotected heights, working with dangerous equipment, working with knives and blades, and working near unprotected water . . . . [and] the claimant cannot perform any work requiring binocular vision.

Id. at 21-22.

Based on these findings and Manchester's age, education, and work experience, the ALJ determined that jobs existed in significant numbers in the national economy that plaintiff could perform. R. at 25. Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. Id. 27.

### B. Plaintiff's Appeal

Manchester contends that ALJ Greener: (1) erred in determining his RFC by

improperly evaluating the opinion of Abdul Latif, M.D., his treating neurologist; (2) failed to analyze the required factors before finding his testimony to be "not entirely credible"; and (3) erred at step five by failing to elicit the testimony of a vocational expert despite the existence of "significant nonexertional impairments." Pl.'s Mem. 13-19.

### 1. **RFC Determination**

Manchester contends that the ALJ's RFC determination is not supported by substantial evidence because she erred in evaluating the opinion of Abdul Latif, M.D., plaintiff's treating neurologist. Pl.'s Mem. 13. The Commissioner responds that "the ALJ's [RFC] finding is supported by medical and other evidence . . . [including] Dr. Latif's many normal neurological findings." Def.'s Mem. 8.

Under the "treating physician rule," the opinion of a plaintiff's treating physician regarding "the nature and severity" of the plaintiff's impairments is entitled to "controlling weight" where it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [in the case record]." 20 C.F.R. § 404.1527(c)(2). "Such opinions are not controlling, however, if they are contrary to other substantial evidence in the record, including the opinions of other medical experts." Lawton v. Astrue, No. 1:08-CV-0137 (LEK/DEP), 2009 WL 2867905, at *10 (N.D.N.Y. Sept. 2, 2009) (Kahn, J.) (citing Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)) (adopting Report-Recommendation of Peebles, M.J.).

Here, Manchester contends that the February 23, 2012 medical source statement completed by Abdul Latif, M.D., plaintiff's treating neurologist, "should have been entitled to great, if not controlling, weight." Pl.'s Mem. 16. This medical source statement indicates that plaintiff's seizures, although "controlled" and occurring "rare[ly]," would still be likely to disrupt

co-workers, cause plaintiff to require more supervision than an unimpaired worker, and cause plaintiff to be absent from work "[a]bout two days per month." R. at 347-48.

ALJ Greener indicated that she gave "little weight" to Dr. Latif's opinion. R. at 24. Specifically, the ALJ found that Dr. Latif's statement that Manchester would be unable to work two days per month was "completely subjective" and "inconsistent with the objective medical and other evidence of record." Id. 24-25. Likewise, the ALJ accorded "little weight" to assessments completed by Lisa J. Trickey, P.A.-C., a physician's assistant in Dr. Latif's office, who indicated that plaintiff was "100%" temporarily impaired.[3] Id. Having accorded "little weight" to the opinions of both plaintiff's treating physician and his treating physician's assistant, the ALJ nevertheless determined the functional limitations arising from plaintiff's severe impairments. She stated:

> I have concluded that, because of the claimant's dizziness upon exertion, he is restricted to lifting and/or carrying 20 pounds on an occasional basis; lifting and/or carrying 10 pounds on a frequent basis; standing and/or walking for about six hours; and sitting for about six hours. I have also concluded that, as a result of the claimant's seizure disorder and headaches, he should not have any exposure to unusual workplace hazards such as working at unprotected heights, working with dangerous equipment, working with knives and blades, and working near unprotected water. I have additionally determined that, due to the claimant's right eye blindness, he cannot perform any work requiring binocular vision.

Id. 24.

It is unclear how ALJ Greener reached these conclusions in her written decision given

---

[3] Although Dr. Trickey's assessments, as a physician's assistant, could "be considered when determining severity of impairments and how they affect [an] individuals' ability to function," her statements that plaintiff was "100%" temporarily impaired constitute opinions on a matter reserved to the Commissioner. Griffin v. Colvin, No. 7:12-CV-976 (GLS/ESH), 2014 WL 296854, at *7 (N.D.N.Y. Jan. 27, 2014) (Sharpe, C.J.) (adopting Report-Recommendation of Hines, M.J.); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he ultimate finding of whether a claimant is disabled and cannot work . . . [is] 'reserved to the Commissioner.'" (quoting 20 C.F.R. § 404.1527(e)(1)).

that she rejected the medical opinions of both Dr. Latif and Dr. Trickey. "It is a fundamental tenet of Social Security law that an ALJ cannot selectively pick and choose only parts of a medical opinion that support h[er] determination." Balles v. Astrue, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *3 (N.D.N.Y. Jan. 23, 2013) (D'Agostino, J.) (citing Nix v. Astrue, 2009 WL 3429616, at *6 (W.D.N.Y. 2009)). And although the ALJ's written decision includes a narrative discussion of the raw medical data contained in plaintiff's medical records, such information is not an acceptable basis for making an RFC finding in the absence of a supporting expert medical opinion. See, e.g., Collins v. Astrue, 10-CV-00718(A)(M), 2012 WL 2573264, at *11 (W.D.N.Y. May 11, 2012), adopted by 2012 WL 2573261 (W.D.N.Y. June 29, 2012) ("[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings." (citation omitted)); Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of a supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." (citation and explanatory parenthetical omitted)); Zorilla v. Chater, 915 F. Supp. 662, 666-67 (S.D.N.Y. 1996) ("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required.").

A review of the administrative record reveals a physical RFC assessment electronically completed and signed by "Davison, D." on April 14, 2011, and a comparison of this assessment with the ALJ's written decision reveals that she apparently relied on this document in making her RFC finding. Compare R. at 314, with R. at 24. However, this assessment fails to indicate whether "Davison, D." is a medical consultant or merely a state

agency disability analyst.[4] Id. 314. While the "evaluations of a non-examining [s]tate agency medical . . . consultant[ ] may constitute substantial evidence in support of an RFC determination," McEaney v. Comm'r of Soc. Sec., 536 F. Supp. 2d 252, 256 (N.D.N.Y. 2008) (citation and explanatory parenthetical omitted), state agency disability analysts are not medical professionals and "an RFC assessment from such an individual is entitled to no weight as a medical opinion." Sears v. Astrue, No. 2:11-CV-138, 2012 WL 1758843, at *6 (D. Vt. May 15, 2012) (collecting cases).

Here, it is not only unclear whether the RFC assessment completed by "Davison, D." would have been a sufficient basis for determining Manchester's RFC in the absence of other medical opinions, but the ALJ's RFC finding appears to mirror this assessment without making any reference to it in the written decision. See Aung Winn v. Colvin, 541 F. App'x 67, 69 (2d Cir. 2013) (summary order) (expressing skepticism of an ALJ's RFC determination where it "correspond[ed] exactly" to the state agency disability analyst's assessment without any corroborating medical data).

Further, the ALJ's apparent rejection of Dr. Latif's opinion based on the fact that it appeared, in the ALJ's judgment, to conflict with the doctor's own conservative clinical

---

[4] If "Davison, D." were a medical consultant, then it would have been permissible for the ALJ to assign some degree of weight to the assessment in reaching her RFC determination. See Steele ex rel. M.D. v. Astrue, No. 09-CV-347 (NAM/VEB), 2011 WL 3841534, at *7 (N.D.N.Y. Aug. 10, 2011) (Bianchini, M.J.) (Report-Recommendation), adopted by 2011 WL 3841536 (N.D.N.Y. Aug. 29, 2011) (Mordue, J.) ("The assessments of consultative examiners may constitute substantial evidence when supported by the weight of the evidence.").
However, if "Davison, D." were merely a state agency disability analyst, then it is hard to imagine how the ALJ could have properly reached her RFC determination in this case, especially given that she had already given "little weight" to both Dr. Latif and Dr. Trickey's assessments. See Box v. Colvin, –F. Supp. 2d–, No. 12-CV-1317(ADS), 2014 WL 997553, at *20 (E.D.N.Y. Mar. 14, 2014) (finding error where ALJ significantly relied on RFC assessment by a state agency disability analyst in denying benefits); Roth v. Comm'r of Soc. Sec., No. 11-CV-00535, 2012 WL 4480688, at *6 (N.D.N.Y. Sept. 26, 2012) (McAvoy, S.J.) ("Numerous courts have concluded . . . that assigning any evidentiary weight to a[ ] [disability analyst's] opinion is an error." (citation omitted)).

findings in the medical record was improper.[5]  "[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him."  Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (quoting McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir. 1983)).

Because the record in this case does not contain an assessment from an acceptable medical source, treating or otherwise, quantifying Manchester's physical capabilities, and it is unclear whether the ALJ could have properly relied on the assessment completed by "Davison, D.," there is no firm basis on which to find substantial evidence supports the ALJ's RFC determination.  See Lawton, 2009 WL 2867905, at *16 (adopting Report-Recommendation of Peebles, M.J. recommending remand, in part, because "[t]he record in this case contains no assessment from a treating source quantifying plaintiff's physical capabilities" and collecting cases).  Accordingly, the case will be remanded.

## V. CONCLUSION

The ALJ's RFC finding is not supported by substantial evidence and further development of the record is appropriate here.  On remand, the ALJ should solicit functional assessments from one or more acceptable medical sources, including Manchester's treating physician, that adequately quantify plaintiff's limitations.  Because the ALJ will be required to

---

[5] As the ALJ noted in her written decision, Dr. Latif's medical source statement does "not provide any assessment of [plaintiff's] ability to perform work-related activities." R. at 24.  "It is well established in the Second Circuit that an ALJ is under an obligation to develop the administrative record fully, to ensure that there are no inconsistencies in the record that require further inquiry, and to obtain the reports of treating physicians and elicit the appropriate testimony during the proceeding." Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 317 (W.D.N.Y. 2013) (citation omitted).  It is unclear whether the ALJ attempted to obtain a more satisfactory functional assessment from Dr. Latif.  Although a failure to request such an assessment "does not necessarily mandate remand," the issue is "whether, in the absence of the assessment, the record was sufficient to support the ALJ's RFC [finding]." Id.  The record is insufficient to do so here.

re-evaluate plaintiff's credibility in light of this additional evidence, and will also be required to determine whether, and to what extent, her prior step five finding is impacted by an RFC determination based on substantial evidence and the correct legal standards, it is unnecessary to address plaintiff's remaining arguments. See Johnson v. Astrue, 811 F. Supp. 2d 618, 631 n. 15 (E.D.N.Y. 2011) (declining to address similar arguments in light of remand and instructing ALJ to consider whether the additional medical evidence alters either determination).

Therefore, it is

ORDERED that

1. Manchester's motion for judgment on the pleadings is GRANTED;

2. The Commissioner's motion for judgment on the pleadings is DENIED; and

The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: October 6, 2014
      Utica, New York.